Navigators Insurance v. Goyard Good morning, your honors. May it please the court. My name is Frank Jordan with the firm of Kennedy's. We represent the Navigators Insurance Company, the appellant and cross appellee in the matter before your honors. I will start by respectfully submitting to your honors that paramount is paramount and that a paramount clause prevails and takes precedence over all other provisions in a policy. And I'll apologize to you all as you'll find that I may be a bit repetitive in my submissions to you all today, but my argument is short and sweet. And that is that the only coverage afforded for Goyard's retail goods not in transit under the Navigators policy is contained in that policy's endorsement number four. A cargo policy traditionally is a transit policy and the coverage there under is conditioned upon goods being in that ordinary course of transit. We cover from point of origin to an arrival at destination. And unless there is an extension of that coverage, which is extended here under endorsement number four, there is no coverage for Goyard's and NYC retail location. And with that, I respectfully submit to your honors that the district court erred in its decision because the Navigators policy, it must be interpreted as written and all provisions therein must be read in their entirety. And when you do so, the only conclusion that can be reached is that the Navigators policy unambiguously excludes coverage for SR and CC for goods held at that Goyard NYC location. What do you make of endorsement number one then? I think that endorsement number one relates strictly to goods in the due course of transit, your honor. And the telltale sign to that, your honor, is endorsement number one. We read every word in this policy. Endorsement number one reads, at the preamble, American Institute of Underwriters endorsement for open policy. That relates to the open policy, the open cargo policy with which it attaches. So therefore, it is contingent upon it being in the due course of transit. In converse, if you were to look to the subject, endorsement number four, it is entitled endorsement number four, storage coverage. Can I ask you what's puzzling me? I understand your argument as it relates to the forms and the policy and how they relate together. I'm getting a little stuck when I look at the declarations page. And when I look specifically at the exposures and the rating basis section, and it describes these different exposures. And one is transit, and then the others are average storage exposure and retail. And those, I assume, are the additional extensions of coverage that are added on by the fourth endorsement. And then it says, war in SRCC included in the rates above. That says to me that in figuring out the exposed value, which is what's in that, the volume that fits in those, and then in turn in calculating the premium rates, because those aren't rates in that box. Rates are what you're charging. The declarations page seems to suggest that the premium was calculated based on the assumption that the strikes rights and civil commotion coverage did attach to the items in storage and retail. Why is that not right? So I would argue to the converse there, Your Honor. And if we go from a premium standpoint, there are a number of different items on that declaration page that get to us to that premium. For example, Goyard now has- Could you just set the page number of the declarations page so we're all on the same page? 452. Yes, it's the- Thank you. Recorded at 52. I apologize. I have it at 786. There's a bunch of them. Yeah, I apologize. I'm at 52. So I'm looking at the right one if I'm looking at 786. It should say open marine declarations. Thank you. For the computation of premium on this particular policy, Goyard now got in-store retail coverage for now seven locations, which are found on the right side of that declaration page under limits of liability, specifically listed under stock. In addition, as to Your Honor's question as to why is there this question of doesn't the Warren S.R.N.C.C. factor into that full premium, if you look down on the insuring conditions, Your Honor, that is on the bottom of page 852, that is the third box from the top. It reads, therein, all shipments goods insured, unless otherwise specified herein are insured against all risks of physical loss or damage from any external clause irrespective of percentage, accepting risks excluded by the FCNS free capture and seizure and the S.R.N.C.C. strikes, rides, and civil commotions warranties or any other exclusion appearing elsewhere in the policy. Right. No, I understand that. And that strikes me as boilerplate. And this other language strikes me as intention with that boilerplate. And it strikes me as actual specific to this policy, which it's where it says rates for these exposures. And it lists all three categories of exposure that the Warren S.R.N.C.C. is included in the rates above. And I'm just trying to, I'm not suggesting that's dispositive. I am trying to figure out whether that injects a certain ambiguity that might not have otherwise existed. And I don't know that it's ambiguous, Your Honor. I just think that it's parsed out on the opposite side of the page in terms of limits of liability. You have that separate section for transit. You have that separate section for stock, which I would equivalent to the average, the storage. And then you have that Warren S.R.N.C.C. million dollar limit of liability. So we're not saying that they don't have S.R.N.C.C. coverage, but that is during the due course of transit. But it didn't say included in transit. I think you did a good, your client did a good job the following year in being more clear about that. And in flagging that the Warren S.R.N.C.C. is included in the rate above only as to transit and not as to these other categories. And it didn't do that. That's all. So your position is that I'm reading that not, in isolation I'm reading that wrong. And that the actual calculation of the exposure and the premium didn't take into account the Warren S.R.N.C.C. endorsement as it applied to two of the three categories listed there. I wouldn't say that your honor is wrong, but I will say I picked up on that. Your honor is reading in isolation. And that's the important part of this entire policy. And my argument is that the whole entire policy must be read in its entirety, not simply in isolation. And if one only reads endorsement one in isolation, you might believe that there is an S.R.N.C.C. covered throughout the policy. But when you read the entire policy with also endorsement four therein, which incorporates a paramount warranty. Well, can I go back then to endorsement number one? Because endorsement number one, read in isolation, we'll get to how we connect all these dots in a moment. But read in isolation, it says this insurance also covers. And then it has number one is physical loss or damages of property due to civil disturbances, labor disturbances, riots, etc. That's number one. Then we get to number three. And number three has a whole bunch of other stuff that's covered. And it says at the very end of it that coverage, notwithstanding this, coverage under this subsection is conditional upon the property insured being in the ordinary course of transit. So number three of this additional coverage, that additional coverage only applies to goods in transit. Why doesn't that imply that the war and civil disturbances provision does not apply only to goods in transit? Why would it be necessary if all of these apply only to goods in transit? Why would it be necessary to specify that number three applies only in the case of goods in transit? It was specified therein, Your Honor, because that is part of an AINU endorsement form, which is a part of TRIA. Transit, I'm sorry, Terrorism Risk Insurance Act. So Terrorism Risk Insurance Act is signed into law by George W. Bush, 2002. And that's a federal backstop for insurance for terrorism. And the appetite for insuring against terrorism is in the due course of transit. It being in that subsection is more or less, it's a red herring to point out that it's not anywhere else therein because that doesn't narrow the scope of coverage in the rest of the endorsement. It speaks to TRIA. It's speaking to the Terrorism Risk Insurance Act, that specific subsection three. Well, it speaks to the fact that this, everything that's in number three is conditioned on the goods being in transit. Whatever is in number three does not cover goods in storage. So I'm still having trouble understanding why, if I buy this policy, at least before I get to endorsement number four, why I would ever think that I haven't bought coverage for something that was previously warranted out. Now I've got this endorsement that puts it back in. I'm going to get to number four in a minute. Sure, Your Honor. My explanation, I think, is, at least in my mind, is quite simple. At that point, the policy, if you've bought, it only has this endorsement number one, you've only bought transit coverage. That's all that exists at that given moment. That's all a cargo policy is. It is a transit policy, and it insures from origin to destination unless there is an extension. So without that endorsement four that we'll speak about, we don't get anything other than transit insurance. And we know that because of the title, Endorsement for Open Policies, Cargo? Well, the policy itself is an open cargo policy. If we go to the, if Your Honors will bear with me, I can give us the page. Even if you go A49, it's an open, I'm sorry, a marine open cargo policy. A marine open cargo policy is a transit policy. The declarations also clarify at A51, ocean marine open cargo policy declarations. And therefore, it is not to more or less dumb it down, but it's nothing more than a transit policy. That's all it provides cover for is transit. So when I look at the goods insured, which to me would be the place I would start to figure out what's covered by the policy. It describes suitably packed goods or merchandise shipped under deck and or on deck. I'm curious, is that a term of art? Does this policy only apply to shipping by ocean vessel and not to train or airplane? Ocean, I mean, an open cargo policy can be used for, this is an open ocean marine policy. But transit can be varied. For example, you'll have- I'm really asking this term shipped under deck and or on deck. Which is the defining description of goods insured, which is what I would take as the starting point. And I just, I'm asking what that term means. Before we get to the, I know the endorsement has changed that. It's the chosen language in the policy for the stowage of that cargo. But as it is an open marine ocean cargo policy, it can contemplate other forms of international transportation. So that's kind of, is that a term of art in the insurance industry that sort of, or at least in this kind of policy that sort of means in transit? I would say correct. Okay. Thanks. So let me get back to endorsement number one and endorsement number four. So I hear your point that we don't get to insuring property and storage until endorsement number four. But what endorsement number four basically says is we're putting back the war, whatever, I don't remember the initials, the civil commotion. SRCC. We're putting it back, which sends you back to the original policy. But the original policy also includes endorsement number one. So I'm not sure that I see, it becomes like a loop. That it takes us back to everything else in the policy, doesn't it, including endorsement number one? But respectfully, your honor, it does not. 9E brings back in specifically that paramount warranty. It's the paramount warranty for SR and CC that it brings back in. There's nothing in this- But the paramount warranty is subject to endorsement number one, isn't it? And for goods in the due course of transit. But why did we say that? I mean, this is saying, now we've got coverage under endorsement number four for goods in storage. And that is subject to the original paramount warranty, which, on the other hand, in this policy, has been canceled. In other words, we're going to treat- Why don't we- Why couldn't we? I put it this way because I'm inclined to the view that there's some ambiguity in this. Why couldn't one interpret this to say that this creates some kind of loop? That first, you've taken out that clause, and then this section just says, we're now extending this all to goods in storage. And that includes this warranty. But that warranty has already, in this policy, in any other policy, if you tack this on, you might have something else. But in this policy, they've specifically bargained to take out that warranty. You see what I'm saying? That is- As a part of the transit- Incorporated by reference into the thing that endorsement four is incorporating by reference. But they've received that limited buyback on the SRCC and endorsement one, conditioned on the goods being in transit. It's the language that breaks the loop that my colleague is talking about. The language at the beginning of perils excluded in endorsement number four that says, notwithstanding anything written or printed above or elsewhere, and in addition to the perils excluded in the policy to which this endorsement is attached, the following perils are excluded from coverage. That is correct, and that is my position, Your Honor. But that doesn't exclude it from goods in transit. Not from goods in transit. No, this is strictly storage coverage. This endorsement is only about storage coverage. I apologize. What that sign is about is referring to, it applies to storage coverage. Correct. Because that's all that endorsement number four is about. The entire endorsement number four is the coverage for goods in retail locations. We've used the word storage, goods in retail locations. Right. Can I ask one unrelated question? If we accepted your view that actually the language is unambiguous in the direction that you described, do we then have an unresolved factual dispute about whether or not this particular loss was, in fact, caused by riot strikes and civil commotion? I saw that to be disputed in the Summer Judgment Record below, and because the court ruled the way it did, it didn't have to decide that question. In my view of the court's decision below, I don't think there was any issue of fact that the George Floyd riots were the cause. Well, the court says Navigators doesn't dispute that, which would make sense because it doesn't mean they're ruling issue, but the court doesn't actually say that's an undisputed fact. That's why I'm just wondering whether your view is, even if you win, is that a remand? I don't think there's any issue of fact that rioting and looting caused this. Let me ask it a different way. Did the court conclude that there was no issue of fact, or are you asking us, since it's de novo review, to review the Summer Judgment Record and make that determination ourselves? If you all did review that de novo, that finding would only be subject to a clearly erroneous standard. We're on Summer Judgment, right, so we're not talking about clearly erroneous. We're talking about de novo review of the record. But if the district court, which I believe the district court did find that there was no issue of fact to the George Floyd rioters causing loss or damage to the goods at Goyard NYC, I don't think there is any issue of fact that would be pending before this court or any court if it was remanded. Can I just also ask you, if we were to conclude that there is some ambiguity created by the interaction between endorsement number one and endorsement number four, you also say that the district court failed to consider extrinsic evidence in your favor while looking at extrinsic evidence in your adversary's favor. Could you just discuss the extrinsic evidence that you think would support your position? I believe the extrinsic evidence that would support in our favor, we had a number of extrinsic evidence. I will just caveat this by saying, Your Honor, I don't think extrinsic evidence has any place in all of this, but while we operate in the... I'm just saying, if we were to disagree with you on that. I go with you, Your Honor. We did have an insurance expert who explained the function of the policy, who explained the traditional ambit of a marine insurance cargo policy, how the paramount clauses and paramount warranties work together. We also did have our own insurance representatives provide their own affirmations and their affidavits and our underwriter as well. It seems that the district court saw fit to simply rely upon binders and quotes, all of which cease to exist once a policy is bound. We may never get to this, of course, if you are correct about the clear language, but you've already referred in talking about, before we got to talk about extrinsic evidence, explicitly you were talking about what is the term of art in the industry in several places, how these policies function within the industry. Does that count before you get to extrinsic evidence? Because you sort of brought that back in when you talked about extrinsic evidence. Isn't there some authority, at least, that you interpret, and maybe that's not admiralty law, maybe that's New York law that I'm thinking about, that that kind of evidence can be considered even before you get to ambiguity as part of resolving what the contract actually says to the relevant people? I don't know, Your Honor, that we would even need it. I think it's so clear on its face. Okay, fine. We'll hear from your adversaries. Thank you, Your Honors. May it please your court, Edward Gross for defendant, appellee, cross-appellant, Goyard, Inc. We are dealing here, Your Honors, with a contract, and it is, of course, black-letter law. When you read a contract, you have to interpret it as a whole, and you have to take all the provisions together in deciding what the contract actually means. And in this case, we have three parts of the contract. There's the pre-printed part, the policy specimen, we have the declarations, and we have several endorsements. And when you look at those things together, that's how you decide what this contract actually means. You can call it a cargo policy and you can look at language that refers to a cargo policy, but in totality, this is more than a cargo policy. This is a policy that provides insurance coverage. This is undisputed. It provides insurance coverage at retail stores as well. And when the decision was made to extend the coverage to retail stores, it was navigated using lateral decision to use endorsement number four as part of the way that they attempted to extend. But if endorsement number four, I'm just helping, and you can help me understand this policy, but if that's the provision that extends coverage to the Fifth Avenue store, why shouldn't we look at paragraph nine of that endorsement and say it rather unambiguously excludes coverage? But it doesn't, Your Honor, because paragraph nine, what section 9E says, it excludes risks under the SR&CC warranties contained in the open policy. It doesn't say it excludes risks identified in section 65 of the policy specimen. It doesn't say it excludes risks arising out of strikes, riots, and civil commotions. It refers back to the open policy. I would not say with all due respect to Judge Lynch, I don't think it creates a loop. What it basically is saying, look, nothing in this endorsement can be read to create SR&CC coverage, which isn't already in the policy. Well, but I want to ask you to address this language that your colleague said is what helps us understand the interplay between the two endorsements. The risks excluded by the warranties in the open policy in which this coverage is attached isn't the only language we're looking at. The introductory language under 9, and perils excluded in endorsement 4, specifically says notwithstanding anything written or printed above or elsewhere, and in addition to the perils excluded in the policy to which this endorsement is attached, the following perils are excluded for coverage. Doesn't that say this takes priority over anything else that might seem to be in conflict with them in the package that we call the policy? Sure, if it were to specifically say that coverage would not be provided for strikes, riots, and civil commotions. But what it says, it doesn't provide coverage for strikes, riots, and civil commotions that are precluded by the open policy. Right, and it didn't say the policy as a whole. It said the open policy, which I always understood as referring to the sort of basic, the base package. No, you're right. The open policy is the entire policy. An open policy is just one which says you can have multiple cargos that are covered by this. It's not for a specific cargo. It's for any cargo that is identified for the insurance area during the course of the year. I see. That's all that that means. It's the entire policy. So you're finding the loop, in effect, in the language of 9E, which says that what is excluded, absolutely, completely, notwithstanding anything else in the policy, is the risk excluded by the warranties contained in the open policy to which this is attached. And that has to be read with endorsement number one. Absolutely, Your Honor. Absolutely, Your Honor. And there's no other way to read it, because otherwise, as I think he was suggesting, then the SR and CC coverage is taken out altogether. And Navigators isn't even arguing that. Okay, what they're saying – Well, it wouldn't mean it was taken out altogether, because this is in an endorsement. It would mean that to the extent we're extending coverage to items beyond items in transit, we are excluding this category of risks. But that's not what the – with all due respect, Judge Robinson, that's not what 9E said. It doesn't say that to the extent storage coverage is provided, then SR and CC coverage is not provided. Well, that's – What it's saying is that – Isn't that in addition to the fact that it's in endorsement number four, which specifically says in consideration of the premium, we're extending the policy to cover goods to which this endorsement is attached, and then this is describing the coverage as to those items? Sure, it does. And that's why the only way to read this is to say that nothing in endorsement number four creates SR and CC coverage that isn't already part of the policy. That's the only logical way to read SR and CC number four – sorry, endorsement number four is to say that this endorsement doesn't create SR and CC coverage that isn't already part of the policy. Now, if there were no paramount provision to exclude SR and CC coverage, this wouldn't mean anything, because it wouldn't create it, it wouldn't take it out. And if endorsement number one didn't exist, it wouldn't mean anything, because there wouldn't be any SR and CC coverage. But 9E says – Why would you need 9E on your read? Because the open policy – the basic policy excludes those things. And so if what we're saying is this only excludes those things to the extent – this doesn't add anything, why would we need to have an exclusion to say this doesn't add anything when the thing you're attaching it to already doesn't? Because you don't know what this form is being attached to. And so I assume that when AIMU drafted this thing, and Goyard didn't draft it, Itsbroker didn't draft it, Navigators didn't draft it, someone else drafted this thing, and Navigators decided to tack it onto the policy. But I think it was just belts and suspensions that lawyers do. Let me ask you about this belt. You just happened to tack it onto the policy. Absent endorsement four, is there any language in the policy that would extend coverage to items in storage or in retail? Absolutely, and it's the provision that you point to when my colleague was arguing. On the declaration page, which is as much part of the policy as anything else in this policy, it specifically says that Warren SRMCC is included in the rates above, including the retail rate. Okay, that may give you an ambiguity. I grant you that. But the first place you look to see what does this policy cover is the definition of what are the goods insured. And that definition is very clear in defining goods and shipment. Right. So absent some endorsement to bring in, that endorsement's not just a thing that was attached by Hapistan. It's the basis for even getting to the items at issue here, isn't it? I respectfully disagree, though, quite frankly, for purposes of this appeal, it doesn't really matter. No, I don't agree with that, Your Honor, because the rates went up by a multiple of six because of the addition of the retail coverage. So it specifically says you're paying for retail coverage. That's what the declaration page said. You're going to pay this additional premium for retail coverage. But what Navigators is saying, and what you're suggesting by your question, Judge Robinson, is, well, if you don't have a specific endorsement that sets forth retail, then you don't get any coverage for retail. Then what am I paying for? No, and I think I hear your answer to the question. You're not contending that absent endorsement for and absent the policy declaration language, there would be any basis for suggesting that this transit policy could reach items sitting in a store, in a retail store. But because the policy declaration lists those items, your position is that supersedes the definition of the goods insured to bring in these other categories independent of endorsement number four? Well, I have a very difficult time saying the goods in the retail store, Your Honor, if this language and endorsement number four weren't in it. But what the goods identifies is, well, what goods are you looking at? It happens to be goods that are shipped by sea from France to New York. But if you want to see where it's covered, you do see in endorsement number four where it says in section three, goods shall be insured under this endorsement subject to the same terms and conditions as applicable during transit. So what endorsement number four says, and we can argue which locations it applies to, what it says is when the goods are not in transit at certain specified locations, the same coverage extends to those goods. The goods are covered. But what endorsement four says and what the declaration page says, where are they covered? It's not just in transit. It's in retail. If we didn't have that, if we didn't have endorsement four, would you have a basis for coming in here and saying that the policy applied at all? Absolutely, Your Honor, by the declaration page. We're paying a premium for retail. It's the declarations page. OK. You can say it's both. You can say it's the declaration page. Judge Hellestein said it was endorsement four. And for purposes of this appeal, it doesn't really matter because it's not disputed that there's retail coverage under this policy. So the quality of cargo policy is he's kind of splitting hairs a little bit here and saying, well, it's a cargo policy, but it also covers retail. He said cargo policies don't cover retail normally. Now, what happened here, and Navigator seeks to sort of obscure this, is that Goyard specifically asked for retail coverage. And Navigator said, yeah, we'll give you retail coverage. Now, they could have issued a separate policy because this is not what Navigator usually does. OK. They have very, very little experience with retail coverage. They're a cargo policy issuer. But what they chose to do, and it was 100% their decision after the policy was put into place, after the effective day of the policy. A couple of months later, they sent the policy to Goyard and MMA, and they chose to add endorsement number four. That was totally their unilateral decision to do that, which is why Judge Hellestein says that any lingering ambiguities have to be construed against Navigator. It was their unilateral decision to add endorsement number four. But having done that, to effectuate what the parties indisputably agreed to, OK, the only way to read endorsement number four is to say, to the extent there's coverage that's entrenched, those goods remain covered at these other locations. So one of the things that one of the questions when these insurance cases come up, we always have this, like, first question about is it ambiguous, and then if it is, we look at all the stuff you just said. And I'm wondering, do we get to all the stuff you've said if we don't think it's ambiguous in one direction or the other? No. No, I don't think you need to get to that, but it is important intellectually to understand this because what Navigator says, well, we don't want to go past the policy, but they're saying, well, this is a cargo policy. But it's not. If you look at the language of the policy, although the words cargo are in the policy, the word retail is there as well. And this is not, strictly speaking, a cargo policy at this point. This is a cargo policy with a retail component to it. And what's covered is the goods, but the locations are retail locations. And the scope of the coverage, to get to the scope of the coverage, you have to read the entire policy. Well, it's a cargo policy to which an ordinary cargo policy, as it were, which includes an exclusion for civil disturbances, to which two things have been added. Yes. One of those two things takes away that exclusion. Yep. And the other of those two things adds storage coverage. That is the only logical way to read the policy. Well, that's your position is that that's the only way to read it. Yes. And the other side is reading it as, well, this starts being a cargo policy. It's still a cargo policy through endorsement number one. It's almost the fact that it's number one. He's saying that number four kind of supersedes number one. That after number one, they've taken away the exclusion, but number four then restores it insofar as it applies to storage. Yeah, but it's not what the policy says, with all due respect, Your Honor. It says to the extent the open policy. You have to tell me with due respect. I'm trying to understand what your position is.  Okay. What my position is, for the purpose of this argument, let's say the only way we have coverage is under endorsement number four. I think they have a problem with the declaration page, but let's say it's just endorsement number four, which is what Judge Ellerstein said. It says, and if you know, Section 9 has several subdivisions to it, but most of them don't refer back to the open policy. 9E does. Because 9E says you can't figure out whether SRCC is covered for retail unless you look at the rest of the policy. So even if you're saying that, or even if one could say that we should read this as if endorsement number four is subsequent to and paramount in a certain sense to endorsement number one, it incorporates by reference the policy as it existed before you get to number four. Right. Including endorsement number one. Yeah. I don't think the ordering of the endorsements is material to this policy, Your Honor, because they, I mean, look, all the provisions have to be read together. Okay. Endorsement number one doesn't refer to endorsement number four. Endorsement number four doesn't refer to endorsement number one. Endorsement number four refers to the entire policy. Now, endorsement number one, it could have been endorsement number six, is as much part of the open policy as endorsement number four is. It's all one policy. I'm not familiar with any principle of law that says that absent recourse referencing specific sections, the ordering of the language in the contract is material to the interpretation of the contract. But when you refer to the open policy, you're referring to the entire policy. And that, in this instance, happens to include endorsement number one. It could just as easily have been endorsement number six. It doesn't really matter. Because endorsement number one, and there's no dispute about this, endorsement number one supersedes the paramount warranty. And once you say that, it's no longer paramount warranty. It's SR&CC covered. If navigators doesn't dispute it, it's covered by the policy. It supersedes the paramount. Right. Excuse me. They're saying it only supersedes it with respect to goods in transit. Right. And it seems to me that that's kind of, that is reading it in sequence. That's reading, you've got one thing. You add endorsement number one. And that makes certain changes. Then you have endorsement number four. And that makes certain other changes that illustrate, or Trump may not be the right word, but that because it says notwithstanding anything else, it takes back or makes clear that the storage policy is kind of a separate addition that comes afterwards. And you're saying no, it's all one integrated agreement. It has to be one integrated. It said to the extent it's in section 65 of the policy specimen, it might be a different point. But it doesn't. It says look to the whole policy to figure out whether it's there. It's just a standard lawyer's language saying nothing in this specimen creates coverage which isn't already there. But it doesn't bring it back. It says if it's in the policy, if it's in the policy, it's here. But the policy says that it's covered. And that's why it's still covered by endorsement number four, notwithstanding that. Now- And my colleague's observation earlier, this does require us to essentially overlook the preface to paragraph nine, right? Notwithstanding anything written or printed above or elsewhere, and in addition to the perils excluded, the following perils are excluded. Not at all, Your Honor. Why is that? Because 9A refers back to the open policy. You're looking at 9A or the other subsects which don't refer to the open policy, you have a different issue. But 9A specifically refers back to the open policy. Now, you can call that a loop. I'm not particularly fond of that term, but I understand where it comes from, Judge Lynch. But it's not a loop. It says look, if it's in the open policy, it's still here. That's all we're saying. And if it's not in the open policy, it's not here. So, again, if the idea is this just doesn't add or detract the coverage relative to the rest of the policy, I don't understand why they would use the language, in addition to the perils excluded in the policy to which this endorsement is attached, the following are excluded. That says to me this endorsement is adding an exclusion on top of any other exclusions that exist in the policy. I hear your point, Judge Robinson, and I've given this considerable consideration. And I think the reason is it's just bad drafting because if Section 65 didn't exist, if the paramount warranties didn't exist, then I don't think there would be any dispute. 9A doesn't add any restrictions to this policy. If endorsement number one didn't exist, I don't think navigators would be arguing or I'd have a very hard time arguing that SR&CC coverage is added by 9A. But because 65 is in there and because endorsement number one supersedes Section 65, and because 9A doesn't refer back to Section 65 but to the entire policy, the only way to read it is to include endorsement number one. I think it's just inarticulate drafting, Judge Robinson, and I don't think a whole lot should turn on the fact that it's inarticulate drafting because if the policy were different, you'd still have no additional exclusion. So one way or the other, you're not actually adding anything to it. And again, I refer to the fact that the non-listening language applies to the entire subsections of Section 9, most of which don't refer back to the open policy, but this one does. And that requires you to go back to the open policy and conclude that whatever the open policy provides, this endorsement doesn't change that one way or the other. It's the only other way to read that. That's the best way to reference the open policy. Otherwise, like I said, again, this can be added to any policy. So like I said, Section 65 didn't exist. Suggesting it's not necessarily bad drafting, it's just that it's boilerplate. It's something that comes in this policy that attaches to whatever it attaches to. And in this particular instance, your position is it doesn't actually change anything. But in some other contract, it might. Given these provisions, it doesn't change anything. That's 100% correct, Your Honor. And if you had a different sort of language, maybe it would mean something. If, for example, you have some provision in the contract saying that SR&CC coverage is provided or that could be interpreted as saying SR&CC coverage is provided to retail, and that's all it said, then endorsement number four says, no, no, no, no. Whatever you think that other provision means, notwithstanding this one governs. But this one trumps anything else out there. But since it refers to the open policy, and the open policy can't be clearer. The open policy provides SR&CC coverage. There's no dispute about that. It's actually in their response to the 56.1 statement. They tried to get around it in their briefs. But that's what Judge Heldstein relied on, their 56.1 response, where they say that endorsement one supersedes the paramount warranty. And once you say that, then you don't need to go beyond that, because what Nye and E said, what I call the boilerplate, I think that's probably a better way of describing it than I did, Judge Lynch, is that whatever's in the policy remains under this endorsement, whether one way or the other. That's the only way to interpret it. And, yes, you can contrive language. Well, they might anticipate that if you attach this to the typical cargo policy, Plano, that that would have the effect of reinforcing the exclusion that is normally in that cargo policy. That could be a way as well. But you're suggesting that this is not an ordinary cargo policy, Plano. This is a cargo policy plus a storage policy. It's not a storage policy. It's a retail policy, which takes it out even further beyond the normal cargo policy. Because storage can mean warehouse and route. But this is way beyond it. So this is something entirely different from an ordinary cargo policy, no matter what you want to say about what the provisions mean. As is often the case, each side wants to insist that this contract is unambiguous on its face. That doesn't automatically mean that it's ambiguous, because one side could be right and one side could be wrong. Absolutely, Your Honor. But there is also the possibility that it is ambiguous. And each side has also suggested that if only you look to the extrinsic evidence, that will answer it. You're saying this is what they bargained for, this is what everybody thought it was going to mean, and they're saying, no, no, no, their experts say it means something completely different, and maybe that's something that ought to be threshed out. Can I address a moment about extrinsic evidence, because this is very important? Magistrate Gorenstein struck their expert report, and that was reaffirmed in reconsideration by Magistrate Gorenstein. Now, they never objected to that report to Judge Hallistein, and they never referred to that expert report in their papers below. That was totally something that they did not argue about at all. So for them to reintroduce that on appeal is something that this Court should not be considering at all. It was stricken, not objected to, and was not even argued to, Judge Hallistein. Now, they did submit two employee reports. But they never disclosed those as experts. And the employee reports have the same exact problem, which is why we made a motion to strike those affidavits below, which Judge Hallistein didn't rule on because he said it was moot. And the way he ruled, he was entirely correct. But if you're going to say there's some sort of ambiguity here, I think you've got to remand consideration or make some sort of determination on that motion to strike if it was not decided. Because the two affidavits that were referenced by Navigators Counsel have the exact same problem as the expert report, which is they only draw conclusions of law as to the interpretation of the policy, which matters if it's being correctly held, is not proper expert testimony or lay testimony for that matter. That's the prerogative of the Court. To cut to the chase, what you're saying is their extrinsic evidence is not really extrinsic evidence because it says this is how we understand the policy. It doesn't say anything about what the negotiations were or anything of that sort. And it doesn't explain the basis for their conclusions. And, you know, the Federal and the Civil Affairs Agents are very clear. If you're going to submit an expert report, you've got to describe how you get there. You can't just say the conclusion. You've got to describe the basis. And neither the expert report nor the, and again, Judge Gernshteyn addressed this issue, and neither the expert report nor the affidavits do you get how they came to that interpretation of the policy. Even if that was proper expert testimony.  And I think . . . I don't want to change the subject, but just quickly before you wrap up, the same question I asked your friend. If we conclude that the policy does in fact exclude this category of risks, is there an open dispute of fact that has yet to be resolved as to whether or not this particular act, the loss, was the result of strikes, riots, and civil commotion? Absolutely, Judge Robinson. That was part of our cross-appeal, which I know . . . Well, your cross-appeal related to your bad faith claim. Now I'm asking a slightly different question. You didn't really raise the issue in the context of the coverage, and I understand that's because your position is that the district court got it right as to the applicability of that exclusion altogether. Now I'm asking you, if we disagree with that, does that have to be resolved either on the record by us, de novo, or by the district court? Our position is the issue of whether or not there was a riot has to be a jury issue, because what you have here . . . There's no dispute that there were riots in the city of New York, not in question, but those riots were in a different part of the city. Okay, you've answered my question. And we talked about this in proximate clause in our papers. I do want to address a moment about the cross-appeal. The cross-appeal suggests you've already won, right? I mean, you're asking for extra beyond what the district court gave you. Well, we're asking for an affirmance but reversed on that part of the argument. And this is a situation where they did no investigation as to the type of the laws. There were witnesses who testified. They didn't really understand how these provisions worked. They made a decision very quickly about what to do, and Judge Hellestein found correctly that as a matter of law, this policy said that riots are covered. And within three days of the law . . . You're saying it's not only unambiguous, but that it is so unambiguous that it is absolute bad faith for them even to rely on it? I think that's a big reach. They had the McLaren's report, which was their adjuster, which didn't say these were caused by riots. He said this was caused by looting, which is something entirely different. And they said, is there any way we can get out of this? And this is in the record as well. Is there any way we can get out of this? They were looking for ways to get out of this, even though they had their own adjuster's report that didn't say this was riots. So we claim that this is bad faith. Okay. We'll hear rebuttal. I'll be brief, Your Honors. I know there's been a lot that's come out to you all. But something that caught me was that this was more or less unilaterally pushed upon Goyard. This was actually an arm's-length negotiation. Goyard had a more than well-versed and experienced broker negotiate this policy for them. They had Jessica Bratz of MMA, who had 21 years of experience as an insurance broker. And she was the one who made the request to navigators for this document of coverage. I mean, the argument is that the specific reference in 9E to open policy means that we should treat the notwithstanding provision and the preface to 9 in a part of the language I also think possibly in 3 as boilerplate. So to the extent that it's saying notwithstanding, anything else earlier in the policy? It's paramount language. The language is clear, as Justice Robinson has alluded to multiple times. To read it any other way is going to render it superfluous. It's as if it doesn't exist. That's my whole easy explanation on 9E and Endorsement 4. I do want to make a point, though, on this modicum of bad faith, which does not exist. And we're always looking for a way to get out of things. There's very interesting details that I've put in the brief for your honors. And that's that Goyard knew that there was a problem with their claim from the very beginning. And they knew that there was a problem with their claim as early as June 2 of 2020. And it's in the record at A1019. Natalie Croft, Goyard's managing director, says, quote, Indeed, we don't know if our insurance coverage is going to work for riots. It could be excluded, unquote. Now, that's June 10. That's eight days following the incident. That's 16 days before we issue a reservation of rights. And it's two months before we issue a declination of coverage. So where does that come from? They were already looking at their policy. And they already realized that they were in trouble with their coverage. So to say that navigators acted in any sense of bad faith is just beyond the realm of reality. We did hire a surveyor, McLaren. They went there. They surveyed the location. We did our own internal investigation. There's correspondence back and forth in the file to all of this. And we did decline coverage some two months later. But to say that we acted in bad faith or tried to avoid any sort of policy obligations, I think that's just beyond any record before your honors. And with that, unless your honors are anything further from me, I'm more than happy to end there. Thank you. We will take the floor. Thank you. Thank you.